USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/6/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
TRUSTEES OF THE NEW YORK CITY :
DISTRICT COUNCIL OF CARPENTERS :
PENSION FUND, WELFARE FUND, : 1:25-cv-6296-GHW
ANNUITY FUND, and APPRENTICESHIP, :
JOURNEYMAN RETRAINING, : MEMORANDUM OPINION &
EDUCATIONAL AND INDUSTRY FUND, : ORDER
TRUSTEES OF THE NEW YORK CITY :
CARPENTERS RELIEF AND CHARITY FUND, :
and THE CARPENTER CONTRACTOR :
ALLIANCE OF METROPOLITAN NEW YORK, :
:
Petitioners, :
:
-against- :
:
NEW YORK CITY ACOUSTICS, INC., :
:
Respondent. :
:
-----------------------------------------------------------------X

GREGORY H. WOODS, District Judge:

Respondent New York City Acoustics, Inc. ("NYCA") violated its collective bargaining agreement by failing to pay employer contributions that it owed to Petitioners. Pursuant to Section 301 of the Labor Management Relations Act (the "LMRA"), Petitioners seek to confirm an arbitration award obtained against NYCA. Petitioners have demonstrated that the arbitration proceeding was conducted in accordance with the parties' agreements and that the arbitration award draws its essence from the agreements and is based on undisputed evidence. Accordingly, the arbitration award is confirmed.

I.  **BACKGROUND**[1]

A. **The Parties**

In this action, the Trustees of the New York City District Council of Carpenters Pension, Welfare, Annuity, Apprenticeship, Journeyman Retraining, Educational and Industry Funds (the "ERISA Funds"); the Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund"); and the Carpenter Contractor Alliance of Metropolitan New York ("CCA" and, together with the other petitioners, the "Funds" or the "Petitioners"), seek to confirm an arbitration award pursuant to a collective bargaining agreement with Respondent. Dkt. No. 1 ¶ 1, 4–6 ("Petition").

The Trustees of the ERISA Funds are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act ("ERISA"). *Id.* ¶ 4; Dkt. No. 16 ¶ 1 ("Rule 56.1 Statement"). The Trustees of the Charity Fund are trustees of "a charitable organization established under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3)." Petition ¶ 5; Rule 56.1 Statement ¶ 2. CCA is a "New York not-for-profit corporation . . . ." Rule 56.1 Statement ¶ 3. All three Petitioners are based in New York City. *Id.* ¶¶ 1–3.

The New York City District Council of Carpenters (the "Union") is a "labor organization that represents employees in an industry affecting commerce within the meaning of Section 501 of the LMRA, 29 U.S.C. § 142." *Id.* ¶ 4. It is also based in New York City. *Id.* The Union "represents certain employees of New York City Acoustics, Inc." *Id.*

---

[1] The undisputed facts are drawn from Petitioners' Local Rule 56.1 statement and sworn documents submitted in connection with this petition.

Respondent is a New York corporation. Petition ¶ 7. It is based in New York City and is "an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142." *Id.*

### B. The Collective Bargaining Agreement

During the relevant period, Respondent was bound by a collective bargaining agreement with the United Brotherhoods of Carpenters and Joiners of America (the "UBJCA"). Dkt. No. 1-3 (the Collective Bargaining Agreement or "CBA"). Respondent was bound under the CBA by virtue of the International Agreement, which Respondent and the UBCJA executed on October 19, 2022 and which incorporates and adopts the CBA. Petition ¶ 8; Rule 56.1 Statement ¶ 6; Dkt No. 1-2 at 2, 5 ("International Agreement"). Respondent and the UBJCA "effectuated" the International Agreement by executing an Administration Form dated September 15, 2003. Dkt No. 1-1 at 1. The International Agreement provides that it "shall remain in effect for three (3) years from [the agreement date], and it shall automatically renew itself for subsequent three-year period unless written notice to terminate is given by either party to the other by registered or certified mail not more than ninety (90), and not less than sixty (60), days prior to its expiration date." *Id.* Respondent never provided such notice to the UBCJA. *See* Petition ¶ 13; Rule 56.1 Statement ¶ 11.

The CBA incorporates and adopts policies and regulations related to employer contributions, including the Revised Statement of Policy for Collection of Employer Contributions, Dkt. No. 1-8 ("Collection Policy"); CBA, Art. XVII § 3.[2]; Petition ¶¶ 14–16; Rule 56.1 Statement ¶¶ 12–15. Accordingly, by virtue of the CBA and the International Agreement, Respondent also agreed to be bound by the Collection Policy.

---

[2] Petitioners support their assertion that the CBA incorporates the Collection Policy by citation to a clause that does not actually appear in the document. Petition ¶ 15. The Court assumes that Petitioners intended to cite to CBA, Art. XVII § 3, where the referenced clause does in fact appear.

3

### C. Contributions and Audits under the Collective Bargaining Agreement and the Collection Policy

The CBA provides that "[e]very Employer covered by this Agreement shall make contributions for each hour worked of all employees covered by this Agreement and employed by said Employer within the territory of this Agreement." CBA, Art. XVII § 1. Petitioners are listed among the organizations in the CBA to which contributions are to be made. *Id.* Petitioners are the Funds to which Respondent was required to contribute in connection with work done by its employees within the trade and geographical territory covered under the CBA. *See* Dkt. No. 13 ¶ 6 ("Davidian Declaration").

The Collection Policy provides that "[t]he Outside Accounting Firms engaged by the Funds shall periodically review and/or audit the books and records of all the employers bound by or signatory to a collective bargaining agreement with [the Union]." Collection Policy § IV.1. If an employer refuses to comply with an audit, the Collection Policy provides a method for estimating the amount of delinquent contributions. In particular, the Funds

> shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period. If the employer reported no hours during the audit period, then the determination shall be made based on the highest number of average hours reported per week for any period of four consecutive weeks during the prior audit period.

*Id.* § IV.12. The Collection Policy further provides that if a determination is made pursuant to this method, the determination "shall constitute presumptive evidence of delinquency." *Id.*

### D. Disputes under the Collective Bargaining Agreement

The Collection Policy provides that "legal action to collect delinquencies shall generally be in the form of arbitration." *Id.* § VI.1. It permits the Trustees to "designate one or more arbitrators to serve in collection matters," and provides that the Trustees "hereby designate a panel of five arbitrators, consisting of: Roger Maher, J.J. Pierson, Steven Kasarda, Jeffrey Stein and Daniel

4

Engelstein."[3]  *Id.* § VI.2.  The panel "can be changed at any time at the discretion of the Trustees." *Id.*

The CBA and Collection Policy provide that, in the event that the Funds must arbitrate a dispute or sue for unpaid contributions, the Funds are entitled to collect more than the late contributions alone.  *See* Davidian Declaration ¶ 13.  In addition to the delinquent amount, the Funds are entitled to "a delinquency assessment."  Collection Policy § V.4.  "The amount of the delinquency assessment shall be the greater of (a) interest on the delinquent contributions . . . or (b) liquidated damages in the amount of twenty percent (20%) of all delinquent contributions."  *Id.*  The Funds are also entitled to interest on the delinquent amount, which is calculated at "the prime rate of Citibank plus 2%."  CBA, Art. XVII § 6(2).  Finally, the Funds are entitled to "[a]ll recoverable costs actually incurred in court or other legal actions for the collection of delinquent contributions."  Collection Policy § V.7.

### E.  The Underlying Dispute and Arbitration

Pursuant to the terms of the CBA and the Collection Policy, Petitioners requested an audit of Respondent covering the period from December 28, 2022 to December 26, 2023.  Rule 56.1 Statement ¶ 21; Davidian Declaration ¶ 14.  The audit calculated that Respondent had failed to remit $42,198.49 in contributions to the Funds.  Dkt. No. 13-6 at 1 ("Audit Report").  Respondent failed to pay the amount stated in the Audit Report.  Petition ¶ 24; Rule 56.1 Statement ¶ 22; Davidian Declaration ¶ 15.

---

[3] On October 14, 2025, Dkt. No. 18, the Court directed Petitioners to explain an apparent conflict between the Collection Policy and the CBA—that is, the Collection Policy designates a panel of five arbitrators, but the CBA provides that "[a]ny grievance . . . shall be submitted to arbitration before Roger Maher or Richard Adelman."  *Compare* Collection Policy § V ¶ 1 *with* CBA Art. XIII § 3.  By letter dated October 22, 2025, Petitioners explained that there was no conflict because this difference "reflects an administrative update adopted by the Funds' Trustees pursuant to their authority under the Trust Agreements . . . [to add] additional qualified arbitrators."  Dkt. No. 20.  On October 30, 2025, Petitioners submitted an affidavit, along with certain supporting documentation, confirming that Steven Kasarda was approved by Petitioners as one of the designated arbitrators under the CBA and Collection Policy.  Dkt No. 22 ¶¶ 10–14.

Because Respondent did not pay what it owed, the Funds initiated arbitration before Steven Kasarda (the "Arbitrator"). Petition ¶ 25; *see also* Collection Policy § VI.2 (designating Mr. Kasarda as an arbitrator). The arbitration was held on February 19, 2025. Petition ¶ 26; Rule 56.1 Statement ¶ 24. The Arbitrator mailed Respondent notice of the arbitration in a letter dated January 17, 2025. Dkt. No. 1-10. Respondent did not appear at the arbitration. Dkt. No. 1-11 at 2 ("Award").

In a March 18, 2025 decision, the Arbitrator determined that Respondent was "delinquent in Fringe Benefit monies due under its written agreements." *Id.* at 2. He awarded Petitioners $64,512.63, consisting of $42,198.49 in total principal, $7,373.51 in interest, $8,618.51 in liquidated damages, $407.75 in "promotional fund fees," $1,066.87 in "non-audit late payment interest," $400 in court costs, $1,500 in attorneys' fees, $1,947.50 in audit costs, and a $1,000 arbitrator's fee. *Id.* at 2–3. He also determined that interest at an annual rate of 9.5% would accrue on the award from the time it was issued. *Id.* at 3. Petitioners served Respondent with a "letter demanding payment and compliance with the Award" on April 10, 2025. Rule 56.1 Statement ¶ 27; Dkt. No. 14 ¶ 4 ("Iorfino Declaration"); Dkt. No. 14-1 (demand letter, stating that "[a] copy of the Award is enclosed").

Respondent has not paid any portion of the Award. Rule 56.1 Statement ¶ 28; Iorfino Declaration ¶ 6.

### F. Relief Sought

Petitioners now seek confirmation of the Award "in all respects." Petition 8. They seek: (1) judgment in the amount of $64,512.63 pursuant to the Award "plus interest to accrue from March 18, 2025 at the annual rate of 9.5%"; (2) an award of $4,300.80 in attorneys' fees and $135.20 in costs arising out of this petition; and (3) "post-judgment interest at the statutory rate." *Id.* at 8–9; *see also* Dkt. No. 14-3 (Proposed Judgment, updating attorneys' fees amounts from those initially sought in the Petition).

The requested attorneys' fees are based on 15.3 hours of work. Rule 56.1 Statement ¶ 35; Iorfino Declaration ¶ 16. Petitioners' counsel, Virginia & Ambinder, LLP ("V&A"), billed for work as follows: "(1) partners at a rate of $430 per hour for work performed in connection with this action; (2) associate attorneys at a rate of $325 per hour for work performed in connection with this action; and (3) legal assistants at a rate of $163 per hour for work performed in connection with this action." Rule 56.1 Statement ¶ 32.

### G. Procedural History

Petitioners filed a petition to confirm the arbitration award on July 31, 2025. Petition 1. They moved for summary judgment on August 20, 2025. Dkt. No. 11. On October 14, 2025, the Court directed Petitioners to file a letter explaining certain inconsistencies between the documentation Petitioner submitted and statements in Petitioners' 56.1 statement. Dkt. No. 18. In the October 14, 2025 order, the Court extended Respondent's deadline to file its opposition to November 5, 2025. *Id.* Respondent has not entered an appearance or made any filings with the Court despite being properly served with the complaint, Petitioners' motion, and all relevant filings. *See* Dkt. No. 17.

## II. LEGAL STANDARD

"Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 [], provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). "Confirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court." *N.Y. Med. Ctr. of Queens v. 1199 SEIU United Healthcare Workers East*, No. 11-cv-4421, 2012 WL 2179118, at *4 (E.D.N.Y. June 13, 2012) (internal quotation marks omitted).

The Court's review of a final arbitration award under the LMRA is "very limited." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). Courts are "not authorized to review the arbitrator's decision on the merits . . . but inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.* It is not the Court's role to "decide how [it] would have conducted the arbitration proceedings, or how [it] would have resolved the dispute." *Id.* at 537. Instead, the Court's task is "simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (noting that an arbitration award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case" and that "[o]nly a barely colorable justification for the outcome reached by the arbitrator[] is necessary to confirm the award" (internal quotation marks omitted)).

"[A]n arbitrator's award resolving a labor dispute is legitimate and enforceable as long as it draws its essence from the collective bargaining agreement and is not merely an exercise of the arbitrator's own brand of industrial justice." *Local 97, Int'l Bhd. of Elect. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999); *see also Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union, Local 261*, 950 F.2d 95, 97 (2d Cir. 1991) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." (internal quotation marks omitted)). "Generally speaking, unless the award is procured through fraud or dishonesty, the decision should not be disturbed." *Niagara Mohawk*, 196 F.3d at 124.

8

When a petition to confirm an arbitration award is unopposed, courts should generally treat "the petition and accompanying record . . . as akin to a motion for summary judgment." *Gottdiener*, 462 F.3d at 109. Thus, like unopposed summary judgment motions, unopposed confirmation petitions "must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* at 110 (internal quotation marks omitted).

### III. DISCUSSION

The unopposed evidence submitted by Petitioners demonstrates that they are entitled to confirmation of the Award, post-judgment interest, and attorneys' fees and costs.

#### A. Confirmation of the Arbitration Award

There is no reason to believe that Petitioners procured the Award through fraud or dishonesty, or that the Arbitrator disregarded the CBA or acted outside the scope of his authority as arbitrator. To the contrary, the record indicates that the Arbitrator based his award on undisputed evidence that Petitioners audited Respondent, discovered delinquencies, and subsequently "duly demanded payment," after which Respondent "fail[ed] to comply." Award 2. The record also indicates that the Arbitrator based the amount of his award of principal, interest, liquidated damages, and various costs on relevant provisions in the agreements and on undisputed testimony. *Id.* at 2–3. Accordingly, the Court grants Petitioners' motion and confirms the Award, including pre-judgment interest at a rate of 9.5% per annum from the date of the award through the date of judgment in this action. *See id.* at 3.

#### B. Post-Judgment Interest

Petitioners also request post-judgment interest accruing from the date of judgment until Respondent pays in full. Petition 9. Under 28 U.S.C. § 1961, "[t]he award of post-judgment interest is mandatory," *Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013), and this mandate applies when confirming arbitration awards, *see, e.g., Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96,

100–01 (2d Cir. 2004). Therefore, the Court grants Petitioners' request for post-judgment interest. Post-judgment interest shall accrue at the statutory rate from the date judgment is entered until payment is made in full.

### C. Attorneys' Fees and Costs of Bringing this Petition

Petitioners also seek to recover reasonable attorneys' fees and costs incurred by bringing this petition. Petition 8. "[I]n a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award." *Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985). Section 301 of the LMRA does not provide for recovery of attorneys' fees. *See id.* "Nevertheless, because a court may, in the exercise of its inherent equitable powers, award attorney's fees when opposing counsel acts in bad faith, attorney's fees and costs may be proper when a party opposing confirmation of an arbitration award refuses to abide by an arbitrator's decision without justification." *Abondolo v. H. & M.S. Meat Corp.*, No. 07-cv-3870, 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (internal quotation marks omitted) (quoting *N.Y. City Dist. Council of Carpenters Pension Fund v. E. Millenium Constr., Inc.*, No. 03-cv-5122, 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003)).

"A party's failure to comply immediately with an arbitration award does not necessarily warrant an award of attorney's fees." *Id.* But courts have found such an award permissible where "the party challenging the award has refuse[d] to abide by an arbitrator's decision without justification." *First Nat'l Supermarkets, Inc., v. Retail, Wholesale & Chain Store Food Emps. Union, Local 338*, 118 F.3d 893, 898 (2d Cir. 1997); *see also Ceona PTE Ltd. v. BMT Giant, S.A. De C.V.*, No. 16-cv-4437, 2016 WL 6094126, at *3 (S.D.N.Y. Oct. 19, 2016) (awarding attorneys' fees and costs to petitioner seeking confirmation of an arbitration award where the respondent "failed to satisfy the Final Award, and has not responded to [the petitioner's] petition in this action"); *Herrenknecht Corp. v. Best Road Boring*, No. 06-cv-5106, 2007 WL 1149122, at *4 (S.D.N.Y. Apr. 16, 2007) (awarding

10

attorneys' fees and costs to petitioner in unopposed petition to confirm an arbitration award where respondent "offered no justification for refusing to comply with the decision of the arbitrator").

Here, an award of attorneys' fees and costs is justified. By entering into the collective bargaining agreement, Respondent agreed to submit disputes arising from the CBA to binding arbitration. CBA Art. XIII § 3[4]; Collection Policy § VI.1. The Collection Policy explicitly entitles Petitioners to recover attorneys' fees incurred "in enforcing the Board of Trustees' rights to payroll reviews and/or audits." Collection Policy § V.6; *see New York City Dist. Council of Carpenters Pension Fund v. Dafna Const. Co.*, 438 F. Supp. 2d 238, 242 (S.D.N.Y. 2006) (awarding attorneys' fees in confirming an arbitration award "because the Agreement itself require[d] [respondent] to pay attorneys' fees incurred by the Trustees in seeking confirmation"). Respondent has neither complied with the Award nor provided any justification for its failure to do so. *See* Iorfino Declaration ¶ 6. For these reasons, the Court finds that it is just and reasonable to award Petitioners reasonable attorneys' fees and costs pursuant to bringing this action.

To calculate reasonable attorneys' fees, "district courts use the lodestar method—hours reasonably expended multiplied by a reasonable hourly rate." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006). "A reasonable hourly rate is a rate 'in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "[I]t is within the Court's discretion to reduce the requested rate" when the Court finds the rate unreasonable in the relevant market. *Trs. of Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Stevenson Contracting Corp.*, No. 05-cv-5546, 2008 WL 3155122, at *9 (S.D.N.Y. June 19, 2008) (citing *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)), *report and recommendation adopted*, 2008 WL 2940517 (S.D.N.Y. July 29, 2008). To assist the

---

[4] *See supra* note 3 and accompanying text.

Court in determining the appropriate award, "[a]pplications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded" from the calculation of a reasonable fee. *Id.* (quoting *Hensley*, 461 U.S. at 434).

Petitioners' request is reasonable. Petitioners request $4,300.80 in attorneys' fees and $135.20 in costs incurred in bringing this petition. Iorfino Declaration ¶¶ 16–17; Rule 56.1 Statement ¶¶ 35–36. Petitioners submitted invoices documenting the specific tasks performed, the number of hours worked in total (15.3), and hourly rates for the two attorneys and three legal assistants who worked on the case. Dkt. No. 14-2. These are satisfactory records of the attorneys' efforts and sufficiently set forth the specific fees and costs incurred while seeking confirmation of the award. *See id.* Furthermore, these fees "are the result of negotiations between V&A and the Funds' Trustees, a group of individuals with extensive business and negotiation experience, regarding the proper hourly rates to compensate V&A's attorneys and legal staff for their services." Rule 56.1 Statement ¶ 34. The Court also concludes that 15.3 hours is a reasonable number of hours worked given the description of the tasks performed.

The fees are based on the following rates. Ms. Moosnick, a partner at V&A, "billed her time at a rate of $430 per hour for work performed in connection with this action." Iorfino Declaration ¶ 10. Ms. Iorfino, an associate at V&A, billed her time "at a rate of $325 per hour for work performed in connection with this action." *Id.* ¶ 9. Ms. Gaalswyk, Ms. Keating, and Mr. James, all current or former paralegals at V&A, billed "at a rate of $163 per hour for work performed in connection with this action." *Id.* ¶¶ 11–13.

Ms. Moosnick's rate is reasonable given that her "primary practice area is the representation of multiemployer benefit funds" and she "regularly handles arbitration hearings and petitions to confirm arbitration awards." *Id.* ¶ 10; *see N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors*, 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (noting that the rate of $425 per hour for partners in 2009 was a reasonable rate commensurate with the costs of similar work in the district for LMRA cases); *Watkins v. Smith*, No. 12-cv-4635, 2015 WL 476867, at *3 (S.D.N.Y. Feb. 5, 2015) ("In the Southern District of New York, fee rates for experienced attorneys in small firms generally range from $250 to $450 in civil cases."). The requested rate of $163 per hour is also reasonable. *See, e.g., Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educ. and Indus. Fund v. Prime Contractors, Inc.*, No. 23-cv-872 (PAE), 2023 WL 2823020, at *4 (S.D.N.Y. Apr. 7, 2023) (finding, in 2023, an hourly rate of $155 per hour reasonable for legal assistants).

Ms. Iorfino's rate of $325 is also reasonable. Ms. Iorfino graduated from law school in 2021 and has more than three years of experience practicing commercial litigation. Iorfino Declaration ¶ 9. $325 per hour is a reasonable rate for work in cases like this one by an associate with more than three years of experience. *See 32BJ N. Pension Fund v. Sedgwick & N. Halls Housing Development Fund Co., Inc.*, 24-cv-3674 (VSB) (HJR), 2025 WL 37563, at *5 (S.D.N.Y. Jan. 6, 2025) ("Courts in this district have . . . awarded rates between $250.00 and $350.00 for associates with approximately five years of experience."); *Wine, Liquor & Distillery Workers' Union, UFCW Loc. 1-D Pension Fund v. Sherry-Lehmann, Inc.*, No. 24-cv-4945 (LGS) (SN), 2025 WL 1167023, at *5 (S.D.N.Y. Feb. 27, 2025) (finding rate of $300.00 for junior associate with less than three years of experience was reasonable). Finally, Petitioners' request for $135.20 in court costs and service fees is reasonable. Iorfino Declaration ¶ 17; Rule 56.1 Statement ¶ 36. Courts in this district routinely permit the recovery of

such costs. *See New York City & Vicinity Dist. Council of Carpenters v. Plaza Constr. Grp., Inc.*, No. 16-cv-1115, 2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016).

Accordingly, Petitioners' request for attorneys' fees and costs is granted. Petitioners are entitled to $4,300.80 in attorneys' fees and $135.20 in costs.

### IV.    CONCLUSION

For these reasons, the petition to confirm the arbitration award is GRANTED. The Clerk of Court is directed to enter judgment for Petitioner in the amount of $64,512.63, plus prejudgment interest calculated at 9.5% per annum from March 18, 2025 through the date of judgment, together with attorneys' fees and costs in the amount of $4,436.00. Post-judgment interest shall accrue at the statutory rate pursuant to 28 U.S.C. § 1961 from the date judgment is entered until payment is made in full.

SO ORDERED.

Dated: November 6, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge